COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Beales and Senior Judge Clements
Argued by teleconference


TIMOTHY M. BARRETT

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1382-10-3                      JUDGE ROBERT P. FRANK
                                                         JULY 26, 2011
COMMONWEALTH OF VIRGINIA,
 DEPARTMENT OF SOCIAL SERVICES,
 DIVISION OF CHILD SUPPORT ENFORCEMENT
 *ex rel*. VALERIE JILL RHUDY BARRETT AND
 VALERIE JILL RHUDY BARRETT


                FROM THE CIRCUIT COURT OF GRAYSON COUNTY
                         Brett L. Geisler, Judge

          Timothy M. Barrett, *pro se*.

          Brian R. Jones, Assistant Attorney General (Kenneth T. Cuccinelli,
          II, Attorney General; Craig M. Burshem, Senior Assistant Attorney
          General; Beth J. Edwards, Regional Senior Assistant General;
          Alice G. Burlinson, Regional Senior Assistant Attorney General,
          on brief), for appellee Department of Social Services/Division of
          Child Support Enforcement.

          Steven R. Minor (Elliott Lawson & Minor, on brief), for appellee
          Valerie Jill Rhudy Barrett.


      Timothy M. Barrett, appellant/father, appeals from the trial court's June 22, 2010 order

modifying his child support obligation.  The Department of Social Services, Division of Child

Support Enforcement (DCSE), a party to the case, responded to father's appeal.  Mother, Valerie Jill

Rhudy Barrett, also responded to the appeal and filed a cross-appeal.

      [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## PROCEDURAL HISTORY

On May 1, 2008, appellant petitioned the juvenile and domestic relations district court to modify the child support award. On appeal to the circuit court on September 23, 2009, the court held a hearing on the petition and in a March 4, 2010 opinion letter the court reduced appellant's child support obligation, making it retroactive to May 1, 2008, the date appellant filed his motion.

Appellant appealed the modification order to this Court, asserting seventeen assignments of error with ten sub-parts. Appellees DCSE and mother responded, with mother filing a cross-appeal and a request by mother for attorney's fees on appeal.

In this appeal, appellant raises various issues regarding child support, imputation of income, admissibility of evidence, and attorney's fees. For the reasons set forth below, we reverse and remand on the child support issues, and affirm the trial court's judgment on all remaining issues.

## GIFTS

Appellant contends the trial court erred in not imputing income to mother for gifts she received from her parents and her church. We agree with appellant and reverse.

In its opinion letter, the trial court stated,

> There is no question that Jill Barrett receives assistance from her parents regarding the custody and support of her children. . . . Although there is some discrepancy between the amount of support Jill Barrett receives from her parents, I find that Jill Barrett primarily receives financial support from her parents when she is not receiving child support payments from Tim Barrett. As was previously found, I do not find that such gifts to be income to Jill Barrett and will not include them as such.

In Barrett v. Commonwealth, No. 1332-07-3, 2008 Va. App. LEXIS 210 (Va. Ct. App. Apr. 29, 2008), this Court found that "[a]lthough the testimony was not entirely consistent, the record contains sufficient evidence to support the trial court's finding[]" that the "gifts" were actually loans from Valerie's father. Id. at *20. In that case, we affirmed the trial court's finding that the monies received by mother were loans. Id. However, we are not bound by that holding

because evidence in this case shows that mother received additional financial assistance from her father since our earlier decision in <u>Barrett</u>. Contrary to what the dissent opinion suggests, there was evidence subsequent to the earlier <u>Barrett</u> case that mother was receiving gifts. Thus, that decision is not the "law of the case." <u>Miller-Jenkins v. Miller-Jenkins</u>, 276 Va. 19, 26, 661 S.E.2d 822, 826 (2008).

In mother's discovery response, which was made a part of the record[1] as "Tim Barrett Exhibit #5," mother admitted that she had received no "loans since May 1, 2008." Based on this evidence, the only possible conclusion to be drawn is that any monies received after May 1, 2008 were gifts.[2]

Other testimony also supports the trial court's finding that the financial aid was intended as gifts. Mother testified that she receives cash from her father in amounts of $200 to $300 per month since May 1, 2008. Her father testified he gives between $1,200 and $1,500 each month to the children living at home with their mother. He described this sum as also including cash to his daughter and payment of her utilities. Mr. Rhudy explained, "I give her the money that's necessary to her to maintain the standard of living that the children deserve, that she deserves and I supplement it, but she hasn't received anything in a long time. So I've been paying all of it." He also stated that mother receives an unknown amount of money from her mother each month.

---

[1] Rule 4:8(e) provides that "interrogatories and the answers thereto as are offered in evidence shall become a part of the record." In addition, Rule 4:11(d) provides that "requests for admissions and the answers thereto as are offered in evidence shall become part of the record." The record reflects that Exhibit #5, "a copy of the discovery completed by Valerie Jill Rhudy Barrett," was received into evidence and "filed as a part of the Court record in this case" by the trial court.

[2] The dissent notes that appellant argues mother received $2,800 per month in gifts from her parents. Our opinion is not predicated on accepting appellant's assertion of this figure. Rather, it is based on mother's testimony.

- 3 -

Additionally, mother acknowledged that she received a one-time gift from her church in order to pay for groceries. The evidence showed that the monies mother received were gifts, not loans, and the trial court so found. While the dissent focuses on mother's testimony that she intended to repay her father, there was also testimony from her that these monies were gifts. The trial court heard the conflicting testimony and resolved the conflict by finding the monies were gifts. However, after making this finding, the trial court did not include these gifts as part of mother's income. This was error.

By statute, gross income includes:

> income from all sources, and shall include, but not be limited to, income from salaries, wages, commissions, royalties, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits except as listed [elsewhere], workers' compensation benefits, unemployment, insurance benefits, disability insurance benefits, veterans' benefits, spousal support, rental income, *gifts*, prizes, or awards.

Code § 20-108.2(C) (emphasis added).

The statute clearly defines gifts as income. At the time mother received these gifts, appellant was not paying child support to her. The trial court could have used that circumstance as a deviation factor in calculating the support award. The trial court is entitled to deviate from the presumptive support amount if it determines that amount to be unjust or inappropriate. Id.; see Pharo v. Pharo, 19 Va. App. 236, 450 S.E.2d 183 (1994). However, once the trial court made a finding that the money was a gift, rather than a loan, it was required to include it as part of mother's income.

Accordingly, we reverse and remand to the trial court for a recalculation of the support award.

Because we remand this case to the trial court for a recalculation of the support award, we will not address any issues that require further factual determinations.  We therefore decline to consider the following assignments of error[3]:

> II – The Trial Court erred in having failed to properly determine the presumptive amount of support per the Guidelines and then having failed to property [sic] determine if that amount was unjust or inappropriate.

> III – The Trial Court erred in making a support decision that is not in keeping with the contemporaneous circumstances of this case.

> X – The Trial Court erred in not subtracting half of the Father's unemployment taxes from his gross income.

## ISSUES INVOLVING JONATHAN

The following assignments of error we do not address because they concern child support for Jonathan and upon remand he would not be entitled to support since he is over the age of eighteen, not incapacitated, nor still in high school.  See Code § 20-124.2(C).

> VII – The Trial Court erred in awarding support for Jonathan past his 18th birthday despite him not living at his Mother's home and in violation of the Father's 13th Amendment rights.

> XII – The Trial Court erred in awarding support to the Mother for Jonathan when she did not have physical custody of Jonathan and was not supporting him.

> XIII – The Trial Court erred in not properly considering Jonathan's independent financial resources.

## IMPUTATION OF INCOME TO APPELLANT

Appellant's assignment of error IX states the trial court erred in imputing income to father.  On remand, if imputation of income to father remains an issue, the trial court must

---

[3] The assignments of error are repeated verbatim from appellant's brief in Record No. 1382-10-3.

consider whether father is voluntarily unemployed or underemployed at the time of the hearing, and if so, the amount of income to be imputed.

The trial court must consider whether father's efforts to secure employment were sufficient to meet father's burden to show he was not voluntarily unemployed and consider whether father acted in good faith and reasonableness in his efforts to secure other employment after the loss of his law license. See Broadhead v. Broadhead, 51 Va. App. 170, 183, 655 S.E.2d 748, 754 (2008); Code § 20-108.1(B)(3).

On remand, the trial court must also consider whether father is voluntarily unemployed since obtaining custody of Alexander, i.e., whether Alexander's current emotional and behavioral status would prevent father from obtaining employment and, if so, whether the cost of child care expenses are included in the support computation.

## MISTRIAL

Appellant's assignment of error XIV states the trial court erred in not declaring a mistrial or reopening this case. We do not address this assignment of error because upon a remand for a determination of child support, the issue becomes moot.

## ISSUES PREVIOUSLY DECIDED

Appellant's brief contains the following assignments of error:

> I - The trial court erred in allowing DCSE to intervene as a party to this case contrary to the law of the Commonwealth of Virginia.

> XV - The trial court erred in finding the Father in arrears when there was not evidence in the record that supports this conclusion.

> XVI - The trial court erred in awarding interest when neither the Mother nor DCSE asked for it, when there was no evidence as to the amount to which interest would apply, and in allowing DCSE to determine the interest amount.

XVII - The trial court erred in premising its support award
on a custody decision that is in violation of the Constitution and
Virginia law and the facts of that case.

In Barrett v. Barrett, Record No. 1381-10-3, an appeal concerning appellant's contempt conviction, appellant assigned identical errors. Because we affirmed those identical issues in an opinion this day decided in Record No. 1381-10-3, we do not repeat our analysis here.

REMAINING ISSUES

To the extent that appellant's remaining issues may again arise on remand, we address the following assignments of error. See Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998).

Appellant's Business Expenses

Appellant argues the trial court erred in not subtracting his reasonable business expenses from his gross income.

Code § 20-108.2(C) provides that "[g]ross income shall be subject to deduction of reasonable business expenses for persons with *income* from self-employment, a partnership, or a closely held business." (Emphasis added). Appellant owns rental property and contends that he should be allowed to deduct reasonable business expenses from income generated from that property. This argument ignores the fact that the property produces no income.

Appellant testified that because of the economy he has received no income from the rental property, although he has incurred business expenses associated with the property. Appellee DCSE responds that because the property was not rented, appellant was not a person with income as contemplated by the statute. We agree with DCSE.

"Under principles of statutory construction, we must consider the ordinary and plain meaning of statutory terms." Winborne v. Virginia State Lottery, 278 Va. 142, 148, 677 S.E.2d 304, 306 (2009). The trial court found that the expenses associated with the property should not

be deducted from appellant's gross income because "the rental property business produces no income itself." We conclude that this ruling is consistent with Code § 20-108.2(C).[4]

### Appellant's Stepchildren

Citing Code § 20-108.2, appellant argues that the court erred in not reducing his gross income based upon uncontradicted evidence that his two stepchildren live in his household. Appellees respond that Code § 20-108.2 applies only to natural and adopted children and the trial court correctly refused appellant this deduction. We agree.

The relevant portion of Code § 20-108.2 states:

> Where a party to the proceeding has a natural or adopted child or children in the party's household or primary physical custody, and the child or children are not the subject of the present proceeding, there is a presumption that there shall be deducted from the gross income of that party the amount as shown on the Schedule of Monthly Basic Child Support Obligations . . . .

Appellant interprets this statute to require two separate facts: 1) that there are children living in that party's household; and 2) that the children not be subject to the support proceeding. He contends his stepchildren meet these requirements.

Appellant misreads Code § 20-108.2. "Under principles of statutory construction, we must consider the ordinary and plain meaning of statutory terms." Winborne, 278 Va. at 148, 677 S.E.2d at 306. Clearly, the statute applies to children, natural or adopted, whether it be a single child or multiple children. It does not refer to a "natural or adopted child" and other "children in the party's household." The words "natural or adopted" modify "child and

---

[4] Because we conclude appellant is not entitled to a deduction for business expenses, we need not address whether the expenses were reasonable.

children." Therefore, we conclude that appellant's stepchildren do not qualify him for a deduction of his gross income because they are not his natural or adopted children.[5]

This interpretation is consistent with the trial court's ruling that appellant is not legally responsible for his stepchildren's support, and we find no error in the trial court's ruling.

### Mother's Imputed Income

Appellant contends the trial court erred in not imputing income to mother. Specifically, he argues the trial court did not apply the correct burden of proof and that mother failed to meet her burden to show a material change in circumstances. Appellant cites Broadhead, 51 Va. App. 170, 655 S.E.2d 748, for the proposition that since the trial court had in an earlier support proceeding imputed income to mother, she now has the burden to prove she no longer is involuntarily unemployed.

Again, appellant misreads our decision. Broadhead specifically places the burden of proving a material change of circumstances on the "moving party," which is appellant in this case. In order to prove a material change in circumstances that justifies a reduction in support, a "'parent must establish that he is not voluntarily unemployed or voluntarily underemployed.'" Id. at 179, 655 S.E.2d at 752 (quoting Virginia Dep't of Soc. Servs. v. Ewing, 22 Va. App 466, 470, 470 S.E.2d 608, 610 (1996)). Otherwise, "'[t]he burden is on the party seeking the imputation to prove that the other parent was voluntarily foregoing more gainful employment, either by producing evidence of a higher-paying former job or by showing that more lucrative work was currently available.'" Joynes v. Payne, 36 Va. App. 401, 421, 551 S.E.2d 10, 19 (2001) (quoting Niemiec v. Commonwealth, 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998)).

---

[5] Because we conclude appellant is not entitled to an income reduction, we need not address his contention that the record contains no evidence that a reduction would not impair mother's ability to care for the children.

Appellant maintains that since the trial court, in an earlier support hearing, imputed income to mother, the "law of the case" doctrine requires the trial court to impute income in the instant proceeding.[6] Appellant misunderstands this doctrine, since it does not apply to determinations based on factual findings.

> "Under law of the case doctrine, a legal decision made at one [stage] of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time."

Kondaurov v. Kerdasha, 271 Va. 646, 658, 629 S.E.2d 181, 188 (2006) (qoting Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Conn., 108 F. Supp. 2d 549, 609 (W.D. Va. 2000)).

Since whether or not to impute income is fact based, Budnick v. Budnick, 42 Va. App. 823, 842, 595 S.E.2d 50, 59 (2004), this doctrine is inapplicable here.

Next, appellant challenges the trial court's computation of support under Code § 20-108.2(G)(2), split custody. This provision provides in part:

> For the purposes of calculating a child support obligation where split custody exists, a separate family unit exists for each parent, and child support for that family unit shall be calculated upon the number of children in that family unit who are born of the parents, born of either parent and adopted by the other parent or adopted by both parents. Where split custody exists, a parent is a custodial parent to the children in that parent's family unit and is a noncustodial parent to the children in the other parent's family unit.

Appellant argues that since he now has custody of Alex, he, Alex, and mother are considered one separate family unit. Therefore, mother, for guideline purposes, must be treated as if she has no other children. Thus, appellant contends, there is no reason for mother to remain unemployed. Again, appellant does not correctly read the statute.

---

[6] Even though we remand for a determination of the appropriate amount of child support, we deem it necessary to explain the doctrine. It is a recurrent theme of appellant.

The statute, by its explicit language, requires appellant, Alex, and mother to be considered one family unit. Appellant, mother, and the remaining children in mother's custody constitute the other family unit. The trial court did not err in applying Code § 20-108.2(G)(2) for split custody.

Subsection C and D of appellant's assignment of error, i.e., that the trial court erred in finding it was impossible for mother to further her education and that the trial court erred in finding that mother was voluntarily unemployed, will not be addressed because these issues must be re-examined at the remand hearing.

Doctrine of Legal Impossibility

Appellant contends that since he has been disbarred from practicing law, the trial court erred in imputing income, based on his earnings from the practicing of law. He cites L.C.S. v. S.A.S., 19 Va. App. 709, 453 S.E.2d 580 (1995), to support his position. In L.C.S. we observed, "income imputation is inappropriate in this case because husband is legally barred from the practice of law due to the loss of his license. Thus, his former employment is a legal impossibility, and any imputation of income based on that employment would be speculative." Id. at 719, 453 S.E.2d at 585.

However, this observation is dicta. In L.C.S. the issue was whether the trial court failed to consider husband's financial resources in calculating the child support, not whether it imputed income based on husband's former profession as an attorney. Husband, while earning no income, had assets that could generate $15,000 income per year. Our "legal impossibility" statement was "not essential" to the disposition of the case. See Deiter v. Commonwealth, 205 Va. 771, 775, 139 S.E.2d 788, 791 (1965) (noting that dicta is language that is "not responsive to the question presented and . . . not necessary to a disposition of the case"). We are not bound by dicta. Newman v. Newman, 42 Va. App. 557, 566, 593 S.E.2d 533, 537 (2004).

A prior memorandum opinion of this Court resolved this issue. In <u>Barrett</u>, 2008 Va. App. LEXIS 210, at *22, appellant raised the identical issue as he does now, i.e., the imputation of income based on his employment as an attorney. In fact, the trial court imputed the same amount as it did in the instant case because appellant had lost his license to practice law.[7] We affirmed the trial court's imputation of income. <u>Id.</u> at *24. Appellant did not appeal that ruling. Thus, the imputation of income based on appellant's income as an attorney became the "law of the case" and appellant is precluded from raising that issue again.[8]

The "law of the case" doctrine is well established in the courts of this Commonwealth. Under this doctrine:

> "[when] there have been two appeals in the same case, between the same parties, and the facts are the same, nothing decided on the first appeal can be re-examined on a second appeal. Right or wrong, it is binding on both the trial court and the appellate court, and is not subject to re-examination by either. For the purpose of that case, though only for that case, the decision on the first appeal is the law."

<u>Miller-Jenkins</u>, 276 Va. at 26, 661 S.E.2d at 826 (quoting <u>Steinman v. Clinchfield Coal Corp.</u>, 121 Va. 611, 620, 93 S.E. 684, 687 (1917)).

> Pursuant to the "law of the case" doctrine, when a party fails to challenge a decision rendered by a court at one stage of litigation, that party is deemed to have waived her right to challenge that decision during later stages of the "same litigation." <u>See</u> <u>Kondaurov v. Kerdasha</u>, 271 Va. 646, 658, 629 S.E.2d 181, 188 (2006). The "law of the case" doctrine applies both to issues that were actually decided by the court, and also to issues "necessarily involved in the first appeal, whether actually

---

[7] At that point, appellant's license was suspended, not revoked. While appellant seeks to distinguish <u>Barrett</u> 2008 Va. App. LEXIS 210, with this distinction, he ignores the fact that whether his license was suspended or revoked, it was legally impossible for him to practice law.

[8] "Unpublished memorandum opinions of this Court are not to be cited or relied upon as precedent except for the purpose of establishing *res judicata*, estoppel or the law of the case. <u>Grajales v. Commonwealth</u>, 4 Va. App. 1, 2 n.1, 353 S.E.2d 789, 790 n.1 (1987).

adjudicated or not." Kemp [v. Miller], 160 Va. [280,] 285, 168
S.E. [430,] 431[(1933)].

Id.

Here, the parties are the same, the issue is the same, and the facts are the same. Appellant

failed to appeal our decision. In fact, the instant appeal was generated by a remand to the circuit

court. Appellant has waived his right to challenge imputation of income premised on his income

as an attorney.

Even if Barrett, 2008 Va. App. LEXIS 210, was wrongly decided, the "law of the case"

doctrine still applies. As cited above, the decision in Barrett, "right or wrong," is binding.

### CROSS ASSIGNMENTS OF ERROR BY MOTHER

Mother assigns the following additional assignments of error[9]:

13. The circuit court erred by making its modification of
the 2007 child support order retroactive to May 1, 2008, when Ms.
Barrett was not given notice until January 28, 2009.

14. The Circuit Court erred by reducing the arrearage for
the first part of 2009 to reimburse part of what Mr. Barrett paid
after May 1, 2008, when there is no authority in Virginia for the
restitution by repayment or offset of previously paid support.

15. The Circuit Court erred by denying Ms. Barrett's
motion for attorney's fees under Va. Code § 20-78.

17. This Court should impose attorney's fees against Mr.
Barrett for this appeal.

Mother assigned these identical issues as error in Barrett, Record No. 1381-10-3.

Because we resolved the issues in an opinion this day decided in Record No. 1381-10-3, we do

not repeat our analysis here. With the exception of assignment of error seventeen, the trial court

---

[9] The assignments of error are repeated verbatim from appellee/mother's brief in Record
No. 1382-10-3.

is affirmed in part and reversed and remanded in part for the reasons set forth in Barrett, Record No. 1381-10-3.[10]

ATTORNEY'S FEES ON APPEAL[11]

Mother asks for her attorney's fees incurred in this appeal. She contends appellant's conduct in this matter "has served only to add to the complexity, expense and delay of this litigation, with no effect on the outcome."

Appellant raised seventeen assignments of error, two of which contained five sub-parts. Out of essentially twenty-seven assignments of error, appellant prevailed on one issue only. In general, his arguments are largely frivolous, misstate the law, and misread the statutes. Additionally, four of his assignments of error are repeated verbatim from another of his pending appeals. Given that mother substantially prevailed and appellant's arguments were largely without merit, we find it appropriate to award mother's attorney's fees. Bchara v. Bchara, 38 Va. App. 302, 318, 563 S.E.2d 398, 406 (2002). Such an award is appropriate under Code § 16.1-278.19.

Accordingly, we direct the trial court on remand to award wife the reasonable attorney's fees she incurred in defending this appeal, as well as any attorney's fees incurred by her on remand to determine such fees. See Miller v. Cox, 44 Va. App. 674, 688, 607 S.E.2d 126, 133 (2005).

---

[10] Mother also contended the trial court erred in suspending judgment during appeal and by establishing an insufficient appeal bond. This matter has been resolved by this Court's order of March 11, 2011, in which we remanded this issue to the circuit court to increase appellant's appeal bond and the suspension bond, pursuant to Code § 8.01-676.1(A) and (C).

[11] Mother did not ask for an award of costs on appeal.

Such award must be "based on the relative financial ability of the parties." Code § 16.1-278.19.[12] See Lynchburg Division of Social Services v. Cook, 276 Va. 465, 666 S.E.2d 361 (2008).

CONCLUSION

For reasons stated, we find the trial court erred in not including gifts from mother's family and church in her gross income for purposes of computing child support. We reverse that decision and remand for a recalculation of child support. We remand all issues relevant to the determination of child support. We also remand for a determination of the effective date of modification of the support order. We affirm the trial court on all remaining issues. Additionally, we award mother her attorney's fee incurred in this appeal and remand accordingly.

Affirmed in part,
reversed in part,
and remanded.

---

[12] We note that while the original child support was established by a circuit court order, the subject of this appeal was originated and initially tried in juvenile and domestic relations district court. Title 16.1 applies to these proceedings in juvenile and domestic relations district court and in the appeal to circuit court. See Code § 16.1-296(I).

Beales, J., concurring, in part, and dissenting, in part.

While I agree with the majority opinion's resolution of every assignment of error raised in this case, with one exception, I disagree with the majority opinion's finding that the trial court erred by failing to include what Mr. Barrett claims are "gifts" to Mrs. Barrett in its calculation of the presumptive guidelines. Thus, while I concur with the majority opinion on all other issues, I would affirm the trial court on this issue. Therefore, I dissent from the majority opinion's decision to remand this case to the trial court for recalculation of the monthly child support award.

In this case, the trial court listed Mrs. Barrett's actual income in the presumptive guidelines as $466 per month, which includes interest on a certificate of deposit (money that actually belonged to her father) and a birthday gift of $200. Appellant argues on appeal that Valerie Jill Rhudy Barrett (mother) receives $2,800 per month in gifts from her parents, and he contends that the trial court should have included this figure in its determination of her income for use in the presumptive guidelines, pursuant to Code § 20-108.2(C). I would find that the trial court did not err in calculating mother's income for use in determining the child support award here.

A. Standard for Reviewing the Evidence

First, appellant does not explain how he arrived at the figure of $2,800 per month in gifts. During argument before this Court, appellant explained that his calculations in this case were based on viewing the evidence in the light most favorable to himself because his motion to reduce the child support award was granted by the trial court. However, this approach to the evidence is not consistent with the traditional standard of review used by appellate courts when reviewing the evidence presented at trial.

Generally, an appellate court reviews the evidence in the light most favorable to the party who prevailed on the issue presented by the appellant's assignment of error before the trial court because the trial court's judgment "cannot be disturbed on appeal unless the court's findings are plainly wrong or without evidence to support them." Ryland v. Manor Care, Inc., 266 Va. 503, 509, 587 S.E.2d 515, 519 (2003). An appellant asks the appellate court to "disturb" a particular finding of the trial court – not necessarily the general outcome.[13] Thus, the party "who prevailed below" is determined by the particular issue raised on appeal – not by the overall result at trial. Here, appellant clearly did not prevail on the issue of mother's income. Thus, we review the evidence in the light most favorable to her (and to the trial court's decision) – not in the light most favorable to appellant. Therefore, appellant's calculation of $2,800 is based on an inaccurate review of the evidence in the record.

## B. Trial Court's Ruling

The testimony at trial here proved that mother's parents paid mother's utility bills and provided her money to purchase food for her and the children when she could not afford to pay for these things – i.e., when appellant had not paid his court-ordered child support. Mother testified that "[m]ost of what's been paid on our behalf are bills which are loans from my father to me."[14] Mother explained that, when she was not receiving her child support payments from

---

[13] For example, in this case, appellant did prevail on some issues before the trial court, and he prevailed on the ultimate general issue raised in his petition – i.e., the trial court did reduce the amount of child support that appellant owed each month. However, as the appellant, he argues more particularly that the trial court erred in reaching its conclusion, and he contends that the award should have been reduced even more. Therefore, although he prevailed on some points, appellant did not prevail on this particular point that is now on appeal. Otherwise, he obviously would not be presenting this assignment of error.

[14] The majority opinion mentions mother's "discovery response" as evidence that none of the money she received after May 1, 2008, was a loan. This statement was part of an interrogatory response – not an admission by mother that was binding on the trial court. Appellant, in fact, does not claim that this "discovery response" was binding on the trial court as he introduced this document at trial for the purposes of impeaching mother's testimony.

appellant, she received from her parents approximately several hundred dollars per month for food and utilities, which were loans to her. She also testified that outright gifts to her since May 2008 had amounted to a total of less than $2,000. Mother admitted that the children themselves received gifts of money from various sources, including from her parents, and appellant does not even argue that those gifts made directly to the children should have been included in mother's income for purposes of calculating the presumptive guidelines.

This testimony was consistent with the testimony presented to the same trial court in 2006 regarding "gifts" to mother – testimony presented as part of an earlier case in which appellant also asked this same trial court to reduce his child support obligation. In that earlier case, the trial court found that "monies received from her father or church or any in-kind gifts from her father" were not income to mother. The trial court noted in 2006 that mother had testified "that it was her intent to pay her father back as soon as she began receiving child support arrearages" and that she "considered these monies received from her father as loans." This Court affirmed the trial court's 2006 ruling that these amounts were not income and need not be included in the presumptive child support guidelines. Barrett v. Commonwealth of Virginia DSS, No. 1332-07-3, 2008 Va. App. LEXIS 210, at *20 (Apr. 29, 2008).

In 2009, this same trial court heard testimony once again from mother that the so-called "gifts" to her were actually loans that she intended to repay. The court also heard testimony that she had repaid $10,000 to her father for amounts that he had previously loaned to her. After hearing this testimony, the trial court noted in its March 4, 2010 letter opinion that appellant was arguing "as was argued in the previous child support hearing." The trial court discussed the evidence and concluded, "As was previously found, I do not find that such gifts to be income to Jill Barrett and will not include them as such."

In reviewing this ruling of the trial court, we should assume that the trial court understood the law regarding child support calculations. See Wilson v. Commonwealth, 23 Va. App. 318, 326, 477 S.E.2d 7, 10 (1996) ("[W]e assume that trial judges have knowledge of the Commonwealth's laws and properly apply those laws."). This presumption is especially applicable here, where this Court has previously affirmed the trial court's ruling on this very same issue, and the trial court specifically referred to its earlier ruling in reaching its decision here. See Damon v. York, 54 Va. App. 544, 555, 680 S.E.2d 354, 360 (2009) (noting that statements of the trial court should not be reviewed in isolation from the context in which they are made); Groves v. Commonwealth, 50 Va. App. 57, 62, 646 S.E.2d 28, 30 (2007) (noting that the full context of a statement by the trial court needs to be considered before finding that a trial court erred in applying the law). Thus, we should assume that the trial court knew that Code § 20-108.2(C) required that actual gifts be included in income for purposes of calculating the presumptive child support guidelines.

The trial court stated in its 2010 letter opinion that it would "not find that such gifts to be income," and explicitly referenced its 2006 ruling.[15] Taken in context, and presuming that the trial court knew and applied the appropriate law, I conclude that the trial court here simply found that nothing had changed since its 2006 ruling regarding the alleged "gifts" to mother. In 2010, the trial court essentially found again that these purported "gifts" to mother were actually loans and, as loans, did not need to be included in mother's income for purposes of calculating the presumptive guidelines. As mother's testimony supports this factual finding, and as she prevailed on this issue before the trial court, we must defer to this finding of the trial court on

---

[15] While this 2006 ruling is not "the law of the case" in this appeal, the 2006 trial court ruling is an important part of the context here – especially because the trial court itself referred to this earlier 2006 ruling (which was affirmed by this Court in 2008) in explaining its 2010 ruling that appellant has now asked this Court to review.

- 19 -

appeal here.  See Owens v. Owens, 41 Va. App. 844, 848-49, 589 S.E.2d 488, 491 (2003).  Thus, for these reasons, I believe that the trial court did not err when it refused to include the alleged "gifts" in mother's income.[16]

### C.  Conclusion

As a result of the foregoing analysis, I would find that the trial court did not err by not including the purported "gifts" in mother's income for purposes of calculating child support under Code § 20-108.2.  Thus, I respectfully dissent from the portion of the majority opinion that finds that the trial court erred in this regard.  I agree with the majority opinion on all other issues.  In addition, because this case is being remanded pursuant to the majority opinion, I agree with the majority opinion's determination that it is unnecessary to address any of the other appellate issues that involve "further factual determinations" or that involve the parties' son, Jonathan.

---

[16] Even if the trial court did err in failing to include some actual gifts in mother's income, I would find that any such error was harmless.  I reach this conclusion because, considering *all* the relevant circumstances in the record (and not simply the error itself), such an error did not affect the ultimate award of child support here.  See Code § 8.01-678; Andrews v. Creacey, 56 Va. App. 606, 625, 696 S.E.2d 218, 227 (2010).

The trial court calculated the presumptive child support guidelines before deviating from those guidelines.  Appellant alleges that the trial court erred in the calculation of the presumptive guidelines because mother's monthly income figure was lower than required by Code § 20-108.2(C).  According to appellant, her income should have included various "gifts."  However, the trial court here explained in a letter opinion that it was inappropriate to include these purported "gifts" in mother's income because it found that this money was received mostly when appellant was not paying his court-ordered child support.  See Code §§ 20-108.1(B); 20-108.2(A) (allowing deviations from the presumptive guidelines).  Therefore, when the trial court calculated the actual child support award in this case, the court did not include these "gifts" – just as the court had not included these "gifts" in calculating the presumptive guidelines.

Based on this record, it is clear that, even if the trial court had included the alleged "gifts" in mother's income when calculating the *presumptive* guidelines, the court then would have subtracted those same "gifts" out of mother's income for purposes of determining the deviations from those presumptive guidelines – and then would have awarded the same *actual* amount of child support that it finally awarded.  Thus, the ultimate award of child support would still have been $1,374 per month, which is where the trial court has set child support here.  Using a higher monthly income figure for mother when calculating the presumptive guidelines would not have changed the ultimate calculation that the court used to deviate from those guidelines.  As a result, any error was harmless because the ultimate result would have been the same.